UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADBASE VENTURES LTD., KEBBLE HOLDINGS, INC., ARENA ENTERTAINMENT LTD., and RORY CARTWRIGHT<br>*Plaintiffs*,<br><br>v.<br><br>AMERICAN ARBITRATION ASSOCIATION, INC.<br>*Defendant*. | Case No. 1:26-cv-09555 |

## **COMPLAINT**

Plaintiffs Broadbase Ventures Ltd., Kebble Holdings, Inc., Arena Entertainment Ltd., and Rory Cartwright (collectively "Plaintiffs"), by and through their undersigned counsel, and in support of their Complaint against Defendant American Arbitration Association, Inc. ("AAA" or "Defendant"), state the following:

## **PARTIES**

1. Plaintiff Broadbase Ventures Ltd. is a corporation registered in the British Virgin Islands with its principal place of business in the British Virgin Islands.

2. Plaintiff Kebble Holdings, Inc. is a corporation registered in the British Virgin Islands with its principal place of business in the British Virgin Islands.

3. Arena Entertainment Ltd. is a corporation registered in Malta with its principal place of business in Malta.

4. Rory Cartwright is an individual and a resident of Gibraltar.

5. Defendant American Arbitration, Inc. is a domestic non-profit corporation registered in New York with its headquarters in New York, New York.

## JURISDICTION AND VENUE

6. This court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

7. For purposes of diversity jurisdiction, AAA is a citizen of New York, the state where it is incorporated and maintains its principal place of business. Plaintiffs Kebble Holdings, Inc., Arena Entertainment Ltd., Broadbase Ventures Ltd., and Rory Cartwright are citizens of foreign states.

8. The amount in controversy exceeds $75,000, as Plaintiffs seek relief from being bound by a mass arbitration seeking damages beyond $75,000. As of October 29, 2026, there are 2,257 claimants with demands naming Plaintiffs as arbitration respondents. By requiring Plaintiffs to take part in the arbitration, AAA is requiring Plaintiffs to pay mass arbitration fees upwards of hundreds of thousands of dollars.

9. This Court is authorized to grant a declaratory judgment and further necessary or proper relief under the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, and injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

10. This Court has personal jurisdiction over AAA because it is a domestic non-profit corporation registered in New York with its headquarters in New York, New York.

11. Venue is proper in the U.S. District Court for the Southern District of New York 28 U.S.C. § 1391(b)(1) and (c)(2) because AAA resides in this District for venue purposes.

**FACTS**

12. In January 2026, Milberg PLLC initiated a mass arbitration on behalf of numerous individual claimants, Case No. 01-26-0000-7411, (the "Mass Arbitration") with the AAA against Broadbase Ventures Ltd., Kebble Holdings Inc., Arena Entertainment Ltd., MW Services Ltd., WOW Services Ltd., Cyberhorizon Ltd., WOWCOM Services, Inc., and Rory Cartwright.[1]

13. As of October 29, 2026, over 2,000 individual claimants have filed demands in the Mass Arbitration.

14. Each claimant asserts damages based on their engagement with the WOW Vegas platform available at https://www.wowvegas.com/.

15. The WOW Vegas Terms of Service ("WOW Vegas Terms" attached as Exhibit 1), which each claimant agreed to, governs the relationship between the claimant, and the entities MW Services Limited, Wow Services Limited, and WOWCOM Services, Inc. MW Services Ltd. operates the Wow Vegas platform.

16. The WOW Vegas Terms include a binding arbitration agreement (the "Arbitration Agreement"), which expressly provides that such agreement be construed under and subject to the Federal Arbitration Act. (WOW Vegas Terms § 18.)

17. Notably, the only parties who agreed to be bound by the Arbitration Agreement are each individual claimant and the respondents MW Services Limited, Wow Services Limited, and WOWCOM Services, Inc ("Signatory Respondents").

---

[1] Claimants subsequently voluntarily dismissed WOW Services Ltd. and Cyberhorizon Ltd from the Mass Arbitration.

18. Plaintiffs Broadbase Ventures Ltd., Kebble Holdings Inc., Arena Entertainment Ltd. and Rory Cartwright are not signatories to the Arbitration Agreement, nor have they otherwise consented to be bound by it.

19. Instead, the claimants demands in the Mass Arbitration include only bald allegations that Broadbase Ventures Ltd., Kebble Holdings Inc., Arena Entertainment Ltd. "function as alter egos" of each other and Signatory Respondents but provide no supporting factual details for such assertion.(*See* Aaron Dousay Demand ¶ 19, attached as Exhibit 2.)[2]

20. As non-signatories to the Arbitration Agreement, the AAA cannot exercise jurisdiction over Plaintiffs in the Mass Arbitration, nor does the AAA have jurisdiction to determine whether Plaintiffs are alter egos of the Signatory Respondents in the Mass Arbitration or whether they fall under any other third-party exception that would bind them to the Arbitration Agreement. Under the Federal Arbitration Act (the "FAA"), a court, not an arbitrator, must decide whether an arbitration agreement extends to non-signatory third parties.[3]

21. The AAA "mass arbitration" process applies to matters where the AAA determines, in its sole discretion, that: (i) twenty-five or more similar demands for arbitration are filed on or behalf of the same party or related parties, and (ii) where representation of all parties is consistent or coordinated across cases.

22. As part of the mass arbitration process, and before the appointment of arbitrators to decide the merits of individual claims, the AAA may, in its sole discretion appoint a process arbitrator to serve as a neutral adjudicator of administrative disputes that may arise between

---

[2] Exhibit 2 is a true and accurate copy of a demand for arbitration filed in the Mass Arbitration. It is representative of all demands, which are substantively identical.

[3] Although under Rule R-51 of the AAA Consumer Arbitration Rules, the AAA is not a proper party to a judicial proceeding relating to an arbitration, the rule expressly does not apply to Plaintiffs as they are not proper parties to the Mass Arbitration and never agreed to be bound by the AAA Consumer Rules. Plaintiffs only made a limited appearance in the Mass Arbitration to specifically contest jurisdiction and expressly preserved their rights and objection to the arbitrator's jurisdiction and the arbitrability of all claims against them.

parties to a multiple consumer case filing. Under the AAA Mass Arbitration Supplementary Rules, a process arbitrator has the authority to decide issues such as whether the parties have met the filing requirements, disputes regarding the payment of administrative fees, and the locale of any hearing.

23. On May 29, 2026, the AAA appointed a process arbitrator (the "Process Arbitrator") in the Mass Arbitration to determine threshold administrative issues between the parties.

24. Following the appointment of the Process Arbitrator, and after an initial conference on July 6, 2026 the Process Arbitrator ordered that the parties submit briefing on the issue of whether Plaintiffs were proper parties to the Mass Arbitration.

25. On July 24, 2026, Signatory Respondents and Plaintiffs submitted initial briefing to the Process Arbitrator explaining why Plaintiffs were not subject to AAA jurisdiction, specifically outlining that Plaintiffs were not signatories to the Arbitration Agreement and no narrow exception—(1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; or 5) estoppel—applied. Plaintiffs submitted the brief for the sole purpose of contesting the AAA's jurisdiction over them.

26. Claimants conceded that Plaintiffs were not signatories to the Arbitration Agreement but nevertheless argued that Plaintiffs were bound under theories of estoppel, agency, and alter ego.

27. On August 7, 2026, the Process Arbitrator, despite finding that Plaintiffs "are not direct parties" to the Arbitration Agreement and that claimants had not established an applicable exception permitting arbitral jurisdiction over such non-signatory respondents, ruled that she had jurisdiction to order discovery to determine the "potential" arbitrability and jurisdiction as to

Plaintiffs in the Mass Arbitration (*See* Process Arbitrator Order 2, attached as Exhibit 3.) As such, she ordered discovery on the corporate structure and relationship between the Signatory Respondents and Plaintiffs. (*Id.*)

28. The Process Arbitrator erroneously ruled that she had the jurisdiction to order discovery as it relates to Plaintiffs under the AAA Consumer Arbitration Rules, the WOW Vegas Terms, and the AAA Mass Arbitration Rules. Again, all agreements none of the Plaintiffs were parties to or bound by.

29. Signatory Respondents partly complied with the discovery order, producing a corporate organization chart demonstrating the distinct and independent corporate structure of Signatory Respondents and a subsequent declaration explaining the same, but refused to engage in the improperly ordered jurisdictional discovery related to information regarding non-signatory Plaintiffs.

30. As a result, on October 23, 2026, the Process Arbitrator sanctioned the Signatory Respondents ordering they pay $31,455.53 and holding that the non-signatory Plaintiffs "shall remain in the case as presumptive affiliates and alter egos" of Signatory Respondents. (See Process Arbitrator Order 9, attached as Exhibit 4.) The Process Arbitrator further ruled that the Signatory Respondents may elect to cure the noncompliance by October 30, 2026, by producing the erroneously ordered discovery documents either to claimants or to the Process Arbitrator for in-camera review. (*Id.*) If the Signatory Respondents decline these options, the presumptive finding will remain in effect until further order of the Process Arbitrator or a court.

31. The Process Arbitrator's sanction order binds Plaintiffs to an arbitration agreement they did not sign, forcing them to arbitrate claims in a forum they never consented to. This sanction is not based on the evidence presented or any third-party contractual liability

theory. Instead, this sanction purports to bind Plaintiffs to the Mass Arbitration of over 2,000 claimants, not based on their own conduct, but based on the actions of Signatory Respondents. Based on her sanction order, it is clear that the Process Arbitrator has overstepped her authority and accepted claimants' inadequate allegations concerning alter ego and veil piercing as true despite them being unable to meet their heavy burden to establish those claims or plead any relevant details in the demand.

32. Binding Plaintiffs to the Arbitration Agreement would force them to expend time and resources arbitrating a dispute for which the award would be unenforceable for lack of jurisdiction.

33. Plaintiffs bring this action to enjoin Defendant, and all persons or entities acting in concert with Defendant, from exercising jurisdiction over them in a dispute governed by an Arbitration Agreement they are not parties to.

34. Plaintiffs further bring this action to enjoin Defendant, and all persons or entities acting in concert with Defendant, from finding that Plaintiffs are alter egos of the Signatory Respondents in the Mass Arbitration, as such decision is reserved solely for a court.

**COUNT I**
**CLAIM FOR DECLARATORY JUSGMENT**
**(28 U.S.C §§ 2201-2202)**

35. Plaintiffs reallege each of the foregoing allegations as if fully set forth herein.

36. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C § 2201(a).

37. Defendant has made it clear it intends to exercise jurisdiction over Plaintiffs.

38. The parties' adverse legal interests are significant, immediate, and real.

39. An actual, justiciable controversy exists between Plaintiffs and AAA concerning whether the AAA can exercise jurisdiction over Plaintiffs and whether AAA has the power to decides its own jurisdiction over parties who have not consented to arbitration.

40. The controversy is ripe in light of the sanction order going into effect on October 30, 2026.

41. Plaintiffs are entitled to a declaration that (i) Defendant, and all persons or entities acting in concert with Defendant, cannot exercise jurisdiction over Plaintiffs in the Mass Arbitration; and (ii) Defendant, and all persons or entities acting in concert with Defendant, do not have the jurisdiction to determine that Plaintiffs, as non-signatories to the Arbitration Agreement, are nonetheless bound by the agreement as alter egos of the Signatory Respondents in the Mass Arbitration or under any other applicable third-party exception.

42. A declaratory judgment will serve a useful purpose in clarifying and settling the legal issues and will afford relief from uncertainty and controversy, giving rise to this proceeding. Plaintiffs further seek such "[f]urther necessary or proper relief based on a declaratory judgment" as warranted, including injunctive relief. 28 U.S.C § 2202.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against AAA, and grant the following relief:

(A) A declaration that Defendant, and all persons or entities acting in concert with Defendant, cannot exercise jurisdiction over Plaintiffs in the Mass Arbitration nor do they have jurisdiction to decide that Plaintiffs are alter egos of the Signatory Respondents in the Mass Arbitration;

(B) A temporary restraining order, on an emergency basis, pursuant to Plaintiff's separate motion for a temporary restraining order, enjoining Defendant, and all persons or entities acting in concert with Defendant, from exercising jurisdiction over Plaintiffs and from finding, presumptively or otherwise, that Plaintiffs are alter egos of the Signatory Respondents in the Mass Arbitration;

(C) A preliminary injunction granting the relief described in paragraph (B) above pending final judgment in this action, pursuant to a motion for a preliminary injunction filed separately;

(D) An order directing Defendant to reassign the Mass Arbitration to a new process arbitrator in order to avoid any further improper exercise of Defendant's jurisdictional authority;

(E) An award of Plaintiff's costs and expenses, including reasonable attorneys' fees, to the extent permitted; and

(F) Such other further relief as the Court deems just and proper.

Dated: November 2, 2026

*/s/Sondra D. Grigsby*

Jeff Ifrah
Sondra D. Grigsby
Kim Conroy
Katherine Kovalsky*
Robert W. Ward*
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jeff@ifrahlaw.com
sgrigsby@ifrahlaw.com
kconroy@ifrahlaw.com
kkovalsky@ifrahlaw.com
rward@ifrahlaw.com

*Counsel for Plaintiffs*

* *pro hac vice* motions forthcoming