# EXHIBIT 3

AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**PROCESS CONFERENCE ORDER No. 2**
(status conference and oral argument)

Case Number: 01-26-0000-7411

Individual claimants
v.
Broadbase Ventures Ltd., Keeble Holdings, Inc., Arena Entertainment Ltd., MW Services, Ltd., WOW Services, Ltd., Cyberhorizon, Ltd., WOWCOM Services, Inc., and Rory Cartwright, respondents

---

The Process Arbitrator (PA) held a Process Conference and oral argument on August 6, 2026 pursuant to Rule MA-6(c) of the Consumer Mass Arbitration Supplementary Rules of the American Arbitration Association (AAA). Prior to the conference, the parties submitted a joint list of issues and agreements for PA consideration. By party agreement or PA order, the following is now in effect:

**Core Dispute**

Claimants challenge the legality of respondents' website as illegal gambling. Respondents counter that they maintain their website for lawful entertainment purposes.

**Mandatory Meet & Confer**

In PO1, the PA ordered the parties to meet and confer on a laundry list of potential customizations and efficiencies to govern the mass arbitration process to meet their needs and the needs of their respective claims without importing the costly tools of traditional litigation. See PO1, dated 07/07/2026. The parties complied and proposed several issues for PA resolution as well as several procedural agreements. The PA and the parties addressed these issues at the August 2026 conference. This order formalizes the parties' agreements and rules on the disputed issues raised in the parties' joint submission. The PA granted the parties' joint request to defer meet and confer on the remaining topics identified in PO1 until after an order on their choice of law dispute. The parties shall resume their meet and confer on the remaining issues and report their agreements and disputes on them at the next scheduled process conference held after the choice of law order.

**Confidentiality**

The parties dispute the need for a protective order in this proceeding. Claimants argued against a formal order, while respondents sought such protections. The PA ruled that arbitrations are "private" in the sense that, unlike in open court, the public has no right of access to arbitral proceedings. The PA previously memorialized this privacy obligation in PO1:

> The parties shall maintain the privacy of all information and never upload any documents produced in this proceeding to a publicly accessible

system.

PO1, dated 07/07/2026.

The PA further ruled that arbitrations are not “confidential” by default in the sense that the parties and counsel have no inherent prohibition against sharing the information gleaned in the proceedings unless otherwise required by (1) privilege, (2) law, (3) the arbitration agreement, (4) other party agreement, (5) court order, or (6) arbitrator order. Under Rule 42, the AAA and arbitrators have a confidentiality duty, but the parties do not share this duty unless one of the above apply. See AAA Con. Arb. Rule, R-42.

At the August 2026 conference, the PA and the parties explored the need for a protective order to safeguard issues, such as medical, fiscal, trade secret, proprietary, or other sensitive information. The PA ruled that no immediate need existed for a protective order at this time, but that she would consider a narrowly tailored protective order designed to protect proprietary, fiscal, and trade secret information as the need arises. The PA denied respondents’ request for a protective order without prejudice. The PA encourages respondents to draft a protective order and circulate it to claimants for review and possible agreement, so that protections will be available when needed. If entered, the protective order will apply globally to all arbitrations in this mass proceeding.

**Claw Back Protections**

The parties agree to implement the following claw back agreement:

> Should a party unintentionally produce a document protected by the attorney-client privilege, the attorney work product doctrine or other applicable privilege or protection, the producing party may request that the document be returned. If such a request is made, all parties to the litigation and their counsel shall promptly return all copies of the document in their possession, custody, or control to the producing party and shall not retain or make any copies of the document or any documents derived from such document. The unintentional disclosure of a privileged or otherwise protected document shall not constitute a waiver of the privilege or protection with respect to that document or any other documents involving the same or similar subject matter.

See PO1, dated 07/07/2026.

**Hearing Type**

The parties agree that the arbitration hearing shall be held virtually through a videoconference platform. The parties will further meet and confer on the host for the hearings. The PA recommends Optima Juris, the AAA’s partner for hearing and court reporting services, as it offers human supervised AI powered transcription at significant cost savings. Optima Juris also offers real time, venue, and other full concierge hearing services. Contact dhs@optimajuris.com directly for pricing and scheduling. Of course, the parties may select any host of their choice.

**Global Award Form**

The parties disagreed upon the best form of award to be issued after each merits hearing. Claimants desired a reasoned award, whereas respondents preferred a shorter form version. The PA ruled that respondents' preferred version more closely aligns with the AAA Consumer Arbitration Rules, which call for a default award with a brief written explanation for the decision. See AAA Con. Arb. Rules, R-54(b). Since the parties could not agree to modify this default rule, the PA held that Rule 45(b) will apply. The parties may further meet and confer upon a "form" for the Merits Arbitrators (MA) to complete, which includes a section for a "brief written explanation" or, alternatively, they may elect to have each MA prepare a brief written explanation for his or her decision. The parties may agree upon a page limit for either.

**Global Discovery Plan**

The parties could not agree upon a global discovery plan to govern these arbitrations. Claimants expressed their intent to seek depositions of three witnesses, to be used across all the cases: Rory Cartwright, Rossella Laghini, and Drew Lauinger. Claimants also intend to seek documents. Respondents countered that fact deposition are not necessary given the legal nature of the claims. However, should depositions be permitted, respondents reserved the right to seek leave to take depositions of individual claimants and any other witnesses claimants intend to offer. Respondents expressed their willingness to negotiate the appropriate time constraints and scope for document exchanges.

The PA ruled that the parties may engage in the following information exchange for the merits portion of these proceedings: (1) agreed upon timely expert witness disclosure, exchange of reports, summaries, or opinions; (2) expert video depositions of a limited mutually agreeable duration; (3) the video deposition of Rory Cartwright; (4) the video deposition(s) of a witness or witnesses selected by respondents up to the same number of hours taken of Mr. Cartwright; (5) rule 26 style initial disclosures; (6) document exchange, including claimants' use of similar platforms; and (7) any other information exchange agreed upon by the parties. The PA denied claimants' request for the depositions of Ms. Laghini and Mr. Lauinger.

The PA issued these discovery rulings without prejudice and subject to the following: (1) the MAs may afford or deny any discovery they deem appropriate in any individual case or batch of cases; (2) any party may request additional discovery from the MA at any time permitted by the MA's scheduling order after first meeting and conferring on the request and reaching impasse; (3) the parties may request global discovery from the PA at any time after first meeting and conferring on the request and reaching impasse; (4) except by agreement or PA order, the parties will not commence discovery on the merits of the claims until after selection of the MAs; (5) unless amended by subsequent order, the PA will not permit depositions during the process phase of these proceedings; (6) the parties may freely exchange or disclose information by agreement or informally at any time without the need to issue a formal discovery pleading or request.

**Choice of Law Dispute**

The parties presented oral argument on their choice of law dispute, focused on the questions raised by the PA in her pre-hearing email and those raised during the hearing. Based upon the briefs submitted to date and the parties' arguments, the PA issued the following tentative rulings:

(1) New York provides the procedural law governing the choice of law question;
(2) New York generally enforces a contractual choice of law provision in a breach of contract dispute unless the choice is wholly unrelated to the parties' dispute or violates a fundamental New York public policy;
(3) The T&C provides for the application of Gibraltar law to govern and interpret the terms and conditions;
(4) The PA finds that respondents have demonstrated a prima facie nexus with Gibraltar sufficient to conclude that its laws could rationally apply to the parties' disputes as determined by New York choice of law doctrine;
(5) Claimants have raised a mix of legal and equitable claims, with both statutory and non-statutory causes of action;
(6) Claimants have not asserted a breach of contract cause of action;
(7) New York applies an interest analysis to non-contract causes of action, when the choice of law provision is narrowly written;
(8) Under clause 18 of the T&C, the FAA and federal arbitration law governs the construction of the parties' arbitration agreement;
(9) Federal arbitration law governs the analysis of the non-signatory respondents dispute; and
(10) Under clause 18 of the T&C, the AAA Consumer Arbitration Rules apply to the parties' dispute, which includes the consumer due process protocols.

The PA reserved decision on the parties' choice of law dispute pending further briefing and analysis.

**Non-Signatory Respondents Dispute**

The parties presented oral argument on their non-signatory respondents dispute, focused on the questions raised by the PA in her pre-hearing email and those raised during the hearing. Based upon the briefs submitted to date and the parties' arguments, the PA issued the following tentative rulings:

(1) An arbitration agreement generally applies only to its parties (signatories) unless an exception applies.
(2) Those exceptions include the doctrines of estoppel, waiver, third-party beneficiary, alter ego, piercing the corporate veil, and voluntary submission to the arbitral jurisdiction.
(3) Claimants bear the burden to prove an applicable exception.
(4) Broadbase Ventures Ltd., Keeble Holdings, Inc., Arena Entertainment Ltd., Cyberhorizon, Ltd., and Rory Cartwright are not direct parties to the T&C arbitration agreement.
(5) Based upon the submissions to date, claimants have not established an applicable exception, which would allow the exercise of arbitral jurisdiction over the non-signatory respondents.
(6) The parties have not engaged in discovery.
(7) Based upon the pleadings and submissions to date, claimants have made a threshold, non-frivolous assertion of arbitrability over the non-signatories sufficient for the PA to exercise her discretion to permit limited jurisdictional discovery.
(8) The PA denies claimants' jurisdictional discovery requests as framed.

(9) The PA rules that she requires additional information to determine the arbitrability and jurisdiction as to the non-signatory respondent.

(10) The PA orders limited jurisdictional discovery as follows:

a. The three agreed proper respondents (MW Services, Ltd., WOW Services, Ltd., and WOWCOM Services, Inc.) shall produce by August 17, 2026 corporate organizational charts (one per respondent) identifying their structural, corporate, and service relationships, connections, and overlaps of any kind with any of the non-signatory respondents and each other.
b. The information should include board of directors' names, corporate officers, key personnel, vendors, agents, service providers, contractual agreements, and other relevant connections.
c. The charts may be submitted in chart form, diagram, or declaration.
d. The information must be submitted under penalty of perjury by a witness with personal knowledge of the relationships.
e. The charts shall reflect the relationships existing as of December 31, 2025, but shall also indicate any changes in those relationships as of August 17, 2026. For example, respondents should identify any defunct entity, bankrupt entity, dissolved entity, purchased entity, etc.
f. The charts shall also identify any non-signatory respondent which had no separate existence at any time before December 31, 2025.
g. The three agreed proper respondents shall also produce by August 17, 2026 their respective corporate governance documents, including shareholder meeting minutes, board of directors' meeting minutes, operating agreements, articles of incorporation, agents of process, and all other corporate organizational and formation documents.

(11) The PA reserves judgment on whether the non-signatory respondents shall be required to produce any information in this proceeding, although the PA tentatively orders them to produce any otherwise publicly available corporate governance documents if needed to answer additional questions after the above exchange.

(12) The PA denied claimants' request for the production of fiscal data, such as shareholder dividends and distributions.

(13) After the production of the above information, the parties shall meet and confer and report by no later than August 24, 2026 any agreements and lingering disputes related to the non-signatory respondents.

The PA reserved decision on the parties' non-signatory respondents dispute pending receipt of the above information, further briefing, and case law analysis.

**Authority**

In response to a party question, the PA identified the following sources of authority to issue the above jurisdictional discovery:

(1) The AAA rules, see, e.g., AAA Con. Arb. Rules, R-7, R-8, R-20, R-21;

(2) The T&C, see clause 18;

(3) Jurisdiction to determine jurisdiction, see, e.g., AAA Mass Arb. Supp. Rules, MA-6(d); and

(4) Like a court, the PA may order limited jurisdictional discovery necessary to determine her jurisdiction. See, e.g., APWU v. Potter, 343 F.3d 619 (2d Cir. 2003); Remesh, Inc.

v. Kantar LLC, 2026 WL 1179652 (S.D.N.Y. Apr. 30, 2026).

**Briefing Schedule**

The PA granted the parties' requests to brief respondents' direct communications with claimants. The parties shall exchange simultaneous opening briefs by no later than September 4, 2026 and simultaneous responsive briefs by no later than September 14, 2026.

The PA also granted the parties' requests for supplemental briefing on the choice of law and non-signatory respondents disputes as follows:

The parties may optionally submit up to five pages by no later than August 14, 2026, addressing the new choice of law issues raised during the conference: specifically, (1) the proper interpretation and scope of the T&C's choice of law provision; and (2) the impact, if any, of the claimants' status as consumers on the choice of law analysis. The parties may separately, optionally submit up to ten pages by no later than August 31, 2026, addressing any new analysis of the non-signatory respondents dispute stemming from the jurisdictional discovery produced as set forth above. The PA will await the parties' supplemental submissions before issuing an order on the disputed issues.

Thereafter, the PA will either rule on the written submissions or hold a hearing on the issues in conjunction with the next process conference to be held September 17, 2026 at 9 am. The PA usually rules on the written submissions unless she has questions or requires clarification.

The PA and the parties reserve briefing on all other issues, including claimants' standing as purchasers, the claimants properly included in the pool, and all other issues previously and hereafter submitted by the parties.

**Next Process Arbitrator Conference**

The PA vacates the September 11, 2026 conference. Instead, the parties and the PA will hold the next conference on September 17, 2026 at 9 am. The parties shall be prepared to discuss the above topics, their agreements, their meet and confer efforts, and their compliance with the deadlines set forth in this Order and PO1. They may also raise any outstanding disputes at this time after meeting and conferring. They shall submit their proposals and any topics they wish to raise at the PC3 by September 16, 2026 by list or email exchange.

**Calendar**

For the parties' convenience, the PA will provide an updated case calendar in WORD format for customization. However, it is the parties' obligation to track and comply with all dates set forth in this order.

**Deadlines & Dates**

The PA will strictly enforce all deadlines and dates stated herein to avoid unnecessary delay and to ensure an expeditious and fair resolution of this matter. The deadlines in this Order are inviolate – not aspirational. Accordingly, the parties shall take full responsibility to comply with

all deadlines. After such deadline, the parties may not file except with the PA's permission, good cause having been shown.

This Order shall continue in effect unless and until amended by subsequent order of the PA. Thank you for the opportunity to work with the parties to customize this mass arbitration.

August 7, 2026
*/s/ Janice L. Sperow*
Janice L. Sperow, Process Arbitrator