Milberg.

**Woodworth B. Winmill**
**Milberg, LLC**
**405 E. 50th Street**
**New York, NY 10022**
**(201) 255-1316**
wwinmill@milberg.com

**November 5, 2026**

**VIA ECF**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street, Room 2510
New York, NY 10007

***Re: Broadbase Ventures Ltd. et al. v. American Arbitration Association,***
**No. 1:26-CV-9555-JMF**

Dear Judge Furman:

Pursuant to Federal Rule of Civil Procedure 24, Local Civil Rule 7.1(e), and Individual Rule 4(A), we submit this letter-motion on behalf of Justin Durflinger and Mitch Dallas, claimants in the underlying arbitration, to intervene in the above-captioned matter and to oppose Plaintiffs' request for a temporary restraining order. A proposed answer in intervention, with affirmative defenses and a counterpetition to confirm the arbitral decision, is attached as Exhibit A.

The Plaintiffs have consented to the intervention. We contacted Defendant on October 31, and the Defendant has not yet stated its position.

## I. Background

Plaintiffs Broadbase Ventures Ltd., Kebble Holdings, Inc., Arena Entertainment Ltd., and Rory Cartwright, along with WOWCom Services, Inc. and MW Services, Ltd. (their subsidiaries, which are respondents in the underlying arbitration but not Plaintiffs here), operate www.wowvegas.com ("Wow Vegas"). Because Plaintiffs are not signatories to the Wow Vegas terms of use, this letter (like the Process Arbitrator's decisions) refers to them as the "Non-Signatory Respondents."



Corporate Disclosure: Milberg is a global law firm with its main headquarters located in San Juan, Puerto Rico as a limited liability corporation. Its domestic United States principal place of business is a professional limited liability corporation located in Knoxville, Tennessee.

Though Wow Vegas purports to offer only "sweepstakes," it has received cease-and-desist orders in Louisiana[1] and Illinois[2] for violations of gambling laws. Similar "sweepstakes" sites have received similar orders in New York,[3] Delaware,[4] Maryland,[5] Arizona,[6] and elsewhere.

In July 2025, a class action arising from Wow Vegas named as defendants WOWCom Services, Inc., MW Services, Ltd. and Arena Entertainment Ltd. (as well as two other affiliates that are now dissolved, WOW Services Ltd. and CyberHorizon, Ltd.). Exhibit 1 to the Declaration of Woodworth B. Winmill. Arena moved to compel, despite its status as a non-party to the arbitration agreement, arguing that the plaintiffs were equitably estopped from denying that their claims against Arena were subject to arbitration. Exhibit 2 at 18 (ECF page numbering) ("Plaintiffs cannot avoid their requirement to arbitrate their disputes by naming CyberHorizon and Arena as defendants either. The Convention allows non-signatories to enforce arbitration agreements under the doctrine of equitable estoppel.").

In January 2026, undersigned counsel began filing demands for arbitration against Plaintiffs and their subsidiaries. Plaintiffs denied that the claimants' claims against them were subject to arbitration and sought relief from the Process Arbitrator as to arbitrability. *See* Exhibits 3, 4 at 8 ("At the PA's invitation, each side prioritized the issues for immediate PA adjudication . . . Respondents identified the relevant group of respondents."), 5 at 1 ("[T]he arbitrator must answer two preliminary questions: (1) which law governs and (2) which named Respondents are required to arbitrate?"). Only after the Process Arbitrator ordered jurisdictional discovery did Plaintiffs begin to argue that the Process Arbitrator lacked the authority to determine arbitrability. *See* Exhibits 6 at 1 ("[N]either the Process Arbitrator nor any subsequently appointed merits arbitrator has jurisdiction to determine that the Non-Signatory Respondents are bound by the WOW Vegas arbitration agreement."). To date, the Process Arbitrator has entered nine orders, addressing a range of issues including choice of law, arbitrability, respondents' efforts to communicate with claimants during the pendency of the arbitration, and respondents' individualized objections to certain claimants. *See* Exhibits 4, 7-14.

As relevant here, the Process Arbitrator found that claimants had made a *prima facie* showing of alter ego and ordered WOWCom Services and MW Services, which admit that they are subject to arbitration, to produce certain documents concerning their corporate governance and their relationships with Non-Signatory Respondents to shed light on claimants' allegations of alter ego. *See* Exhibits 4, 7, 9. WOWCom Services and MW Services refused to produce these documents, and after further briefing, the Process Arbitrator imposed sanctions of an adverse determination that the Non-Signatory Respondents are subject to arbitration and attorneys' fees. Exhibits 6, 14-22. The Plaintiffs now seek a temporary restraining order overturning that jurisdictional determination.

---

[1] https://lgcb.dps.louisiana.gov/illegal-operators/
[2] https://igb.illinois.gov/content/dam/soi/en/web/igb/documents/casino/cease-and-desist-letters/20260204-cease-and-desist-wow-vegas.pdf
[3] https://ag.ny.gov/press-release/2025/attorney-general-james-stops-illegal-online-sweepstakes-casinos
[4] https://news.delaware.gov/2025/04/07/delaware-shuts-down-illegal-online-slots/
[5] https://www.mdgaming.com/wp-content/uploads/2025/03/VGW-Cease-and-Desist.pdf
[6] https://gaming.az.gov/sites/default/files/C%26D%28s%29%20Press%20Release%20Final.pdf

## II. This Court should permit Mr. Durflinger and Mr. Dallas to intervene.

A party may intervene as of right where that party "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). A party may also seek permissive intervention where the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Either standard is met here, and Plaintiffs have consented to the intervention. Specifically, an adverse determination by this Court of Plaintiffs' claims against the arbitration provider would prevent Mr. Durflinger and Mr. Dallas from pursuing their claims in arbitration against Plaintiffs, and Mr. Durflinger's and Mr. Dallas's assertions that their claims against Plaintiffs are subject to arbitration shares common questions of law and fact with Plaintiff's claims against the arbitration provider.

## III. This Court should deny the temporary restraining order.

### a. Plaintiffs have an adequate (and exclusive) remedy at law: a petition to vacate.

"It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (citation omitted). Additionally, "even though Rule 57 of the Federal Rules of Civil Procedure permits declaratory relief although another adequate remedy exists, it should not be granted where a special statutory proceeding has been provided." *Katzenbach v. McClung*, 379 U.S. 294, 379 (1964) (citation omitted). Indeed, the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 328 (2015) (citation omitted).

Here, Congress has provided an adequate legal remedy; a "special statutory proceeding"; and single, express method for obtaining the relief Plaintiffs seek: a district court "may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10. However, Plaintiffs have not invoked this remedy, presumably because of the daunting legal standard it imposes: "as a general matter, a court is required to enforce the arbitration award as long as there is a 'barely colorable justification for the outcome reached.'" *Leeward Construction Co., Ltd. v. American University of Antigua–College of Medicine*, 826 F.3d 634, 638 (2d Cir. 2016) (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)). Plaintiffs should not be permitted to dodge the legal standard in the specific remedy Congress has provided, by instead seeking an injunction, "an extraordinary remedy." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

Process Order No. 9 is an "award" subject to vacatur or confirmation even though it did not resolve all issues in the arbitration for two, independent reasons. First, the questions of sanctions and arbitrability are "independent and separate from the remaining issues before the arbitrator[] and could be finally determined without reference to those legally irrelevant issues," *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d Cir. 1986), namely claimants' underlying substantive allegations. Second, "if the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so . . . once arbitrators have finally decided the submitted issues, they are, in common-law parlance, '*functus officio*,' meaning that their authority over those questions is ended," and the decision is ripe for judicial review. *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir.

1991). Here, the Non-Signatory Respondents proposed that the Process Arbitrator resolve their jurisdictional objections as a threshold matter separate from the merits, and claimants and the Process Arbitrator agreed. Additionally, though claimants believe that the captioning of the document as an "order," rather than an "award," is immaterial, they have asked the Process Arbitrator to issue a new document captioned as a "partial final award" out of an abundance of caution. The Process Arbitrator has agreed to do so.

Cases entertaining equitable relief against arbitrations, including those cited by Plaintiffs, *see* ECF No. 14 at 13, 19-20, consistently involved applications for injunctive relief *prior* to the arbitrator's decision on arbitrability. *See* *Resource Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 110 (2d Cir. 2024) (arbitration filed in February 2023 and complaint filed in March 2023); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 128 (2d Cir. 2003) (complaint filed prior to deadline to file answer in arbitration); *Boroditskiy v. European Specialties LLC*, 314 F.Supp.3d 487, 492 (SDNY 2018) (arbitral and judicial proceedings both filed in December 2016); *Kwatinetz v. Mason*, 356 F.Supp.3d 343, 346-47 (SDNY 2018) (complaint filed shortly after initial conference in arbitration); *UBS Sec. LLC v. Voegeli*, 684 F.Supp.2d 351, 354 (SDNY 2010) (complaint filed prior to deadline to file dispositive motions in arbitration); *Tellium, Inc. v. Corning Inc.*, 2004 WL 307238, at *1 (SDNY Feb. 13, 2004) (complaint filed before preliminary hearing on "disputed issues of fact regarding agency"). In these cases, a petition to vacate would have been inadequate and inapplicable, because there was no arbitral decision to vacate.

While an unwilling respondent in arbitration may choose to arbitrate or litigate questions of arbitrability, that respondent should not be permitted to arbitrate arbitrability, lose, and then litigate the same issue afresh.

**b. Plaintiffs are unlikely to prevail on their claims.**

**i. Plaintiffs are unlikely to demonstrate Article III standing.**

"To establish standing . . . a plaintiff must demonstrate . . . that she has suffered or likely will suffer an injury in fact." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024) (citation omitted). "[T]he injury must be actual or imminent, not speculative." *Id.* at 381 (citation omitted).

As to injury, Plaintiffs assert that they may face substantial arbitration fees. Complaint, ¶ 8. However, AAA's practice has been to assess invoices to one side or the other (claimants or respondents) as a group, rather than to any specific party. *See* Exhibits 23-26. Because WOWCom Services and MW Services do not dispute that they are subject to arbitration and will presumably continue paying the invoices they receive, regardless of whether the Plaintiffs also receive those invoices, Plaintiffs do not establish how they will face any arbitration fees specific to them.

Furthermore, though Plaintiffs have suggested that may also incur legal fees, *see* ECF No. 14 at 14-15, all respondents have shared counsel in the arbitration, and all respondents would presumably make the same arguments, such as that Wow Vegas complies with gambling laws and does not deceive its customers. Moreover, WOWCom Services and MW Services will presumably continue to retain these same lawyers and make these same arguments in the arbitration, regardless of whether the Plaintiffs join in these arguments. Thus, Plaintiffs have not articulated how they specifically may face increased legal fees.

Finally, any underlying awards on the merits remain "speculative," not "actual or imminent," as respondents dispute claimants' underlying allegations.

**ii. Plaintiffs have not demonstrated statutory jurisdiction.**

As the Court observed, the complaint fails to establish jurisdiction under 28 U.S.C. § 1332, because it alleges only Mr. Cartwright's residence, not his citizenship. ECF No. 27.

**iii. Arena Entertainment, Ltd. is judicially and equitably estopped from denying arbitration.**

"Judicial estoppel is an 'equitable doctrine' intended 'to protect the integrity of the judicial process,' . . . by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Keathley v. Buddy Ayers Constr., Inc.*, 146 S.Ct. 1532, 1538-39 (2026) (citation omitted). Additionally, "a company "knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001). "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006).

Here, Arena has taken opposite positions in the *Mayhone* class action and the mass arbitration as to whether claims against it are subject to arbitration and has "knowingly exploit[ed]" the arbitration agreement within the Wow Vegas terms through its motion to compel in *Mayhone*, only to disavow it in this proceeding.

**iv. Because the Non-Signatory Respondents objected only to arbitration of the underlying claims but sought arbitral resolution of whether the claims were subject to arbitration, they agreed to arbitrate arbitrability.**

Plaintiffs urged the Process Arbitrator to decide that claimants' claim against them were not subject to arbitration. *See* Exhibits 4, 5. Plaintiffs only changed their position to argue that the Process Arbitrator lacked jurisdiction to do so after she began to entertain claimants' requests for jurisdictional discovery. Exhibit 6. Plaintiffs cannot have it both ways and should be held to their original position, whether under principles of acquiescence or waiver.

**v. The Process Arbitrator's discovery order was proper.**

Though Plaintiffs asserted that the "demands in the Mass Arbitration include only bald allegations" of alter ego, the pleading standard in arbitration is significantly lower than in federal court. However, through multiple rounds of briefing, Claimants submitted substantial evidence in the form of respondents' filings with various governments, respondents' employees' LinkedIn pages, and various media and governmental reports concerning online gambling and offshore finance in the jurisdictions in which respondents are organized both to support their claims and to show the limitations of publicly available documents.

In addition, the arbitrator had authority to make decisions concerning jurisdiction, discovery, and jurisdictional discovery. Specifically, AAA's Consumer Rules provide: "The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the . . . arbitrability of any claim." R-7(a).[7] The Consumer Rules also provide:

> The arbitrator may, on application of a party or on the arbitrator's own initiative . . . require the parties, in response to reasonable document requests, to make available to the other party documents in the responding party's possession or custody not otherwise readily available to the party seeking the documents and reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues.

R-20(c). The AAA's Consumer Due Process Protocol reinforces this right to discovery: "No party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute."[8] The Process Arbitrator reviewed the issue of jurisdictional discovery exhaustively. *See* Exhibit 9. These issues may be better resolved after fuller briefing at the preliminary injunction, summary judgment, or petition to confirm or vacate stage.

**vi. The Process Arbitrator's sanctions order was proper.**

The Consumer Rules authorize the arbitrator to "order appropriate sanctions against a party that has failed to comply with its obligations under [the Consumer] Rules or with an order of the arbitrator." R-57(a). The Consumer Rules impose three guardrails on sanctions. First, "[i]n the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award." *Id.* Throughout their extensive briefing and exhibits, as well as their emails to the Process Arbitrator and opposing counsel, claimants submitted both "evidence" and "legal argument."

Second, "[t]he arbitrator may not enter a default award as a sanction." *Id.* Claimants neither sought nor received a default judgment. Instead, the Process Arbitrator imposed an adverse finding and attorneys' fees. Third, "[t]he arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application." R-57(b). Through multiple rounds of briefing, the Process Arbitrator complied with this requirement. The parties briefed both the proprietary of sanctions and which specific sanctions would be appropriate. *See* Exhibits 15-22.

**c. Plaintiffs cannot establish irreparable injury.**

Though Plaintiffs assert "[c]ompelling arbitration of a matter not properly subject to arbitration constitutes per se irreparable harm," ECF No. 14 at 19 (quoting *Tellium, Inc. v. Corning Inc.*, 2004 WL 307238, at *3 (SDNY Feb. 13, 2004)), the Second Circuit has since rejected that rule: "rather than focusing on the potential inarbitrable nature of the claim, the critical issue for the Court to consider is whether the proffered injury is compensable." *Resource Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 116 (2d Cir. 2024).

---

[7] https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf
[8] https://www.adr.org/media/x3mdzarl/consumer_due_process_protocol.pdf

*Resource Group* remanded for further consideration of irreparable injury, but other circuits have held that such a showing is nearly impossible. "[T]he only potential injury from waiting until the arbitrators have made their award is delay and the out-of-pocket costs of paying the arbitrators and legal counsel. Long ago the Supreme Court held that the delay and expense of adjudication are not 'irreparable injury'—if they were, every discovery order would cause irreparable injury." *Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011) (quoting *Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 222 (1938)); *accord. Camping Const. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) ("The district court's principal error lies in its assumption that unnecessarily undergoing arbitration proceedings constitutes irreparable injury. That is simply not the case.").

Because WOWCom Services and MW Services will continue paying arbitration fees and legal fees in the underlying case, regardless of whether Plaintiffs remain as respondents and join in their arguments, Plaintiffs have not demonstrated any injury, let alone irreparable injury.

**d. The balance of equities and public interest weigh against relief.**

Plaintiffs should not be allowed to arbitrate an issue fully and then seek a do-over in court. That is not consistent with the purpose of arbitration, the swift and efficient resolution of disputes, nor is it an appropriate use of judicial resources.

Respectfully submitted,

*/s/ Woodworth B. Winmill*
Melissa H. Nafash
Woodworth B. Winmill
Billy J. Hernandez (*pro hac vice* forthcoming)

*Counsel for Intervenors Justin Durflinger and Mitch Dallas*