UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROADBASE VENTURES LTD., KEBBLE HOLDINGS, INC., ARENA ENTERTAINMENT LTD., RORY CARTWRIGHT, MW SERVICES LTD., and WOWCOM SERVICES, INC.<br><br>*Petitioner-Plaintiffs*,<br><br>v.<br><br>JUSTIN DURFLINGER and MITCH DALLAS<br>*Defendant-Respondents*. | Case No. 1:26-CV-09555-JMF |

**AMENDED COMPLAINT**

Plaintiff-Petitioners Broadbase Ventures Ltd., Kebble Holdings, Inc., Arena Entertainment Ltd., Rory Cartwright, MW Services Ltd., and WOWCOM Services, Inc., (collectively "Petitioner-Plaintiffs"), by and through their undersigned counsel, respectfully petition this Court, pursuant to 9 U.S.C. §§ 201-208, Section 10 of the Federal Arbitration Act ("FAA," (U.S.C. §§ 1-16)), for an order vacating the Partial Final Award, dated November 3, 2026. (*See* Partial Final Award (the "Sanction Award"), attached at Exhibit 1.)

In support of this Amended Complaint, Petitioner-Plaintiffs allege as follows:

## PARTIES

1. Plaintiff-Petitioner Broadbase Ventures Ltd. is a corporation registered in the British Virgin Islands with its principal place of business in the Principality of Monaco.

2. Plaintiff-Petitioner Kebble Holdings, Inc. is a corporation registered in the British Virgin Islands with its principal place of business in the British Virgin Islands.

3. Plaintiff-Petitioner Arena Entertainment Ltd. is a corporation registered in Malta with its principal place of business in Malta.

4. Plaintiff-Petitioner Rory Cartwright is an individual who is a citizen of Ireland. Rory Cartwright is domiciled in Gibraltar and is not a citizen of any State of the United States.

5. Plaintiff-Petitioner MW Services Ltd. is a corporation registered in Gibraltar with its principal place of business in Gibraltar.

6. Plaintiff-Petitioner WOWCom Services, Inc. is a corporation registered in Delaware with its principal place of business in Delaware.

7. Defendant-Respondent Justin Durflinger is an individual residing in and domiciled in Florida.

8. Defendant-Respondent Mitch Dallas is an individual residing in and domiciled in Missouri.[1]

## JURISDICTION AND VENUE

9. This Petition falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") and Chapter 2 of the FAA,

[1] Plaintiff-Petitioners bring this action against two representative Claimants from the underlying mass arbitration, Case No. 01-26-0000-7411, before the American Arbitration Association, Inc (the "Mass Arbitration"). Mr. Durflinger and Mr. Dallas sought leave to intervene in this action as "Intervenor-Defendants," which this Court granted. *See* ECF Dkt. Nos. 32 and 34. The Sanction Award applies to all claims and parties in the Mass Arbitration, and as such, an order to vacate would apply to all claims and parties.

9 U.S.C. §§ 201-208, because the Award resolves a commercial dispute that is not entirely between citizens of the United States. *See* 9 U.S.C. § 202.

10. The controversy arises from a written arbitration agreement designating New York, New York as the arbitral seat; involves a commercial relationship; and is not entirely between citizens of the United States. *See* 9 U.S.C. § 202; Wow Vegas Terms of Service, § 18.7.e ("WOW Vegas Terms" attached as Exhibit 2.)

11. This Court has subject-matter jurisdiction over the Petition under 28 U.S.C. § 1331 because an action or proceeding falling under the Convention is deemed to arise under the laws and treaties of the United States. 9 U.S.C. § 203.

12. This Court additionally has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

13. For purposes of diversity jurisdiction, Justin Durflinger is domiciled in and a citizen of Florida.

14. For purposes of diversity jurisdiction, Mitch Dallas is domiciled in and a citizen of Missouri.

15. For purposes of diversity jurisdiction, WOWCom Services Inc. is a citizen of Delaware.

16. For purposes of diversity jurisdiction, Plaintiffs Kebble Holdings, Inc., Arena Entertainment Ltd., Broadbase Ventures Ltd., Rory Cartwright, and MW Services Ltd. are citizens of foreign states.

17. The amount in controversy exceeds $75,000, as Petitioner-Plaintiffs seek relief from being bound by a mass arbitration seeking damages beyond $75,000 and that require mass arbitration fees upwards of hundreds of thousands of dollars.

18. This Court has personal jurisdiction over Defendant-Respondents because they consented to jurisdiction in this District by agreeing to arbitrate in New York. (*See* Wow Vegas Terms, § 18.7(5), attached as Exhibit 2.)

19. Venue is proper in the U.S. District Court for the Southern District of New York pursuant to 9 U.S.C. § 204 because the arbitration agreement designates New York, New York, as the place of arbitration, which lies within the Southern District of New York.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### i. The Mass Arbitration

20. In January 2026, Milberg PLLC initiated a mass arbitration on behalf of numerous individual claimants, Case No. 01-26-0000-7411, (the "Mass Arbitration") with the American Arbitration Association Inc. ("AAA"), against Broadbase Ventures Ltd., Kebble Holdings Inc., Arena Entertainment Ltd., MW Services Ltd., WOW Services Ltd., Cyberhorizon Ltd., WOWCOM Services, Inc., and Rory Cartwright.[2]

21. As of November 10, 2026, over 1,950 individual claimants (collectively "Claimants") have filed demands in the Mass Arbitration, including Defendant-Respondents Durflinger and Dallas.

22. The AAA "mass arbitration" process applies to matters where the AAA determines, in its sole discretion, that: (i) twenty-five or more similar demands for arbitration are filed on or

[2] Claimants subsequently voluntarily dismissed WOW Services Ltd. and Cyberhorizon Ltd from the Mass Arbitration.

behalf of the same party or related parties, and (ii) where representation of all parties is consistent or coordinated across cases.

23. As part of the mass arbitration process, and before the appointment of arbitrators to decide the merits of individual claims, the AAA may, in its sole discretion, appoint a process arbitrator to serve as a neutral adjudicator of administrative disputes that may arise between parties to a multiple consumer case filing. Under the AAA Mass Arbitration Supplementary Rules, a process arbitrator has the authority to decide issues such as whether the parties have met the filing requirements, disputes regarding the payment of administrative fees, and the locale of any hearing.

24. On May 29, 2026, the AAA appointed Janice L. Sperow as the process arbitrator (the "Process Arbitrator") in the Mass Arbitration to determine threshold administrative issues between the parties.

25. Each claimant asserts damages based on their engagement with the Wow Vegas platform available at https://www.wowvegas.com/.

26. The Wow Vegas Terms (*see* Exhibit 2), which each claimant agreed to, governs the relationship between each claimant, and the entities MW Services Limited, Wow Services Limited, and WOWCOM Services, Inc. MW Services Ltd. operates the Wow Vegas platform.

27. The Wow Vegas Terms include a binding arbitration agreement (the "Arbitration Agreement"), which expressly provides that such agreement be construed under and subject to the Federal Arbitration Act. (Wow Vegas Terms § 18, Exhibit 2.)

28. The Wow Vegas Terms explicitly define "MW Services Limited," "We," "Us," and "Our" to mean MW Services Limited, and WOWCom Services Inc., each of which is a contracting party with each user.

29. MW Services Ltd. and WOWCom Services Inc. (collectively, "Signatory-Plaintiffs") are the only Petitioner-Plaintiffs that agreed to be bound by the Arbitration Agreement.

30. Broadbase Ventures Ltd., Kebble Holdings Inc., Arena Entertainment Ltd. and Rory Cartwright (collectively, "Non-Signatory Plaintiffs") are not signatories to the Arbitration Agreement, nor have they otherwise consented to be bound by it.

31. Instead, Claimants' demands in the Mass Arbitration include only bald allegations that Broadbase Ventures Ltd., Kebble Holdings Inc., Arena Entertainment Ltd. "function as alter egos" of each other and Signatory Plaintiffs but provide no supporting factual details for such assertion. (*See* Demand ¶ 19, attached as Exhibit 3.)[3]

**ii. The Jurisdictional Dispute**

32. Since the initiation of the Mass Arbitration, Non-Signatory Plaintiffs have continuously objected to AAA exercising of jurisdiction over them as non-parties to the Arbitration Agreement.

33. During the first conference with the Process Arbitrator on July 6, 2026, counsel for Signatory-Plaintiffs made it clear that the propriety, jurisdiction, and arbitrability of naming the Non-Signatory Plaintiffs was contested.

34. Following the July 6, 2026 conference, the Process Arbitrator ordered that the parties submit briefing on the issue of whether Non- Signatory Plaintiffs were proper parties to the Mass Arbitration. Plaintiff-Petitioners submitted to the Process Arbitrator that she may determine procedures for whether Non-Signatory Plaintiffs were subject to the Arbitration Agreement in order to ensure that proper procedures were in place to allow the Non-Signatory Plaintiffs to object

[3] Attached as Exhibit 3 is a true and accurate copy of a representative demand filed by Claimant Mathew Altwegg in the Mass Arbitration. Consistent with mass arbitration procedures, Counsel for Defendant-Respondent's submitted a spreadsheet containing the names of all Claimants, including Mr. Dallas and Mr. Durflinger, which functionally asserted identical demands.

to the AAA's jurisdiction as early as possible and before any merits arbitrators were appointed and per-case fees were charged. Any consent by the Non-Signatory Respondents to be heard by the Process Arbitrator was in the narrow context of appearing to specifically contest jurisdiction and the arbitrability of any claims made against them.

35. On July 24, 2026, Signatory Plaintiffs and Non-Signatory Plaintiffs jointly submitted briefing to the Process Arbitrator explaining why Non-Signatory Plaintiffs were not subject to AAA jurisdiction, specifically outlining that the Non-Signatory Plaintiffs were not signatories to the Arbitration Agreement and that no narrow exception—(1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; or 5) estoppel—applied to bind them to the agreement as their separateness from the Signatory Plaintiffs barred Claimants from forcing them to arbitrate against their will.

36. Non-Signatory Plaintiffs submitted the briefing for the sole purpose of contesting the AAA's jurisdiction over them and explicitly did not waive any objection to the arbitrator's jurisdiction or the arbitrability of any claims against them.

37. Non-Signatory Plaintiffs did not otherwise participate in the Mass Arbitration and did not consent to AAA jurisdiction beyond the initial briefing contesting jurisdiction.

38. Claimants conceded that Non-Signatory Plaintiffs were not parties to the Arbitration Agreement but nevertheless argued that they were bound under theories of estoppel, agency, and alter ego.

39. Claimants offered only speculative and inconclusive evidence regarding the purported (but nonexistent) alter ego status of Non-Signatory Respondents amounting to: statements made on corporate websites and in court filings, LinkedIn profiles of individuals associated with Non-Signatory Plaintiffs, and generalizations about the jurisdictions in which the

Non-Signatory Plaintiffs were organized. None of the evidence presented by Claimants was sufficient for a finding of alter ego warranting the extraordinary remedy of piercing the cooperate veil, and the Process Arbitrator never made such determination on the evidence.

**iii. The Process Arbitrator's Discovery Order**

40. On August 6, 2026, the Process Arbitrator heard oral argument on the issue of proper parties. During oral argument, the Process Arbitrator indicated that she would order discovery about the corporate structure of the Non-Signatory Plaintiffs. Counsel, on behalf of Signatory Plaintiffs, objected to the request, explaining that Non-Signatory Plaintiffs could not be obligated to produce discovery as improper parties to the Mass Arbitration as the Process Arbitrator lacked authority to order discovery targeting Non-Signatory Respondents. As such, the Process Arbitrator revised her discovery order to impose these obligations on Signatory-Plaintiffs alone.

41. On August 7, 2026, the Process Arbitrator, despite finding that Non-Signatory Plaintiffs "are not direct parties" to the Arbitration Agreement and that Claimants had not established an applicable exception permitting arbitral jurisdiction over such non-signatory respondents, ruled that she had jurisdiction to order discovery to determine the "potential" arbitrability and jurisdiction as to Non-Signatory Plaintiffs in the Mass Arbitration. (*See* Process Arbitrator Order 2, attached as Exhibit 4.) As such, she ordered discovery from the Signatory Plaintiffs on the corporate structure and relationship between the Signatory Plaintiffs and Non-Signatory Plaintiffs. (*Id.*) The discovery order broadly requested information on "service relationships," "vendors," "contractual agreements," and all corporate governance documents including "shareholder meeting minutes, board of directors' meeting minutes, [and] operating agreements." (*Id.*)

42. The Process Arbitrator erroneously ruled that she had jurisdiction to order discovery as it relates to Non-Signatory Plaintiffs under the WOW Vegas Terms, an agreement the Non-Signatory Plaintiffs are not parties to, and the AAA Consumer Arbitration Rules and Mass Arbitration Rules—rules the Non-Signatory Plaintiffs never agreed to be bound by.

43. The discovery as ordered was only relevant to the issue of binding Non-Signatory Plaintiffs to the Arbitration Agreement and was otherwise irrelevant to the other procedural or merits issues of the Mass Arbitration. Non-Signatory Respondents never consented to participating in discovery in the Mass Arbitration and expressly objected to it on the grounds of lack of jurisdiction.

44. On August 17, 2026, Signatory Plaintiffs partially complied with the Process Arbitrator's discovery order, producing a corporate organization chart demonstrating the distinct and independent corporate structure of Signatory-Plaintiffs and a subsequent declaration explaining the same, but refused to engage in the improperly ordered jurisdictional discovery related to information regarding Non-Signatory Plaintiffs.

45. On August 19, 2026, Signatory Plaintiffs communicated to Claimants and the Process Arbitrator that nearly all of the information sought by Claimants and ordered by the Process Arbitrator was readily available through public corporate registries. Signatory Plaintiffs further objected to the jurisdictional order as overbroad under Consumer Rule R-20 and objected to producing two specific categories of information: (1) "service relationships, connections, and overlaps of any kind with any of the non-signatory respondents and each other" and (2) shareholder meeting minutes or board meeting minutes. Claimants made no showing that the documents were relevant and material to the outcome of the disputed jurisdictional issues.

46. The Process Arbitrator permitted briefing on the issue of whether Signatory Plaintiffs' failure to produce this information warranted sanctions.

47. On August 28, 2026, Signatory Plaintiffs submitted briefing that explained that the Process Arbitrator lacks authority to order jurisdictional discovery because the Process Arbitrator lacks jurisdiction to determine whether the Non-Signatory Plaintiffs are subject to the arbitration agreement—only a court could determine such jurisdiction. The Non-Signatory Plaintiffs did not participate in the briefing because, as non-parties to the Arbitration Agreement, the Process Arbitrator lacked authority to order discovery from them and they did not otherwise consent to the AAA's jurisdiction for purposes of jurisdictional discovery.

48. Nevertheless, on September 9, 2026, the Process Arbitrator issued an order on the jurisdictional discovery affirming her prior ruling and subsequently ordered sanctions against the Signatory Plaintiffs, but permitted briefing on the proper form of sanctions.

**iv. The Process Arbitrator's Sanction Order**

49. Claimants sought sanctions consisting of an adverse finding that Non-Signatory Plaintiffs were subject to the Arbitration Agreement and therefore proper respondents in the Mass Arbitration.

50. Signatory Plaintiffs, in return, argued that an adverse finding was a disproportionate sanction for a discrete discovery issue related to the challenged jurisdiction. Non-Signatory Respondents once again did not participate in the briefing because, as non-parties to the Arbitration Agreement, the Process Arbitrator lacked authority to issue sanctions against them.

51. On October 23, 2026, the Process Arbitrator sanctioned the Signatory Plaintiffs ordering they pay $31,455.53 and held that the Non-Signatory Plaintiffs "shall remain in the case as presumptive affiliates and alter egos" of Signatory Plaintiffs. (*See* Process Arbitrator Order 9,

attached as Exhibit 5.) The Process Arbitrator further ruled that the Signatory Plaintiffs could cure the noncompliance by October 30, 2026, by producing the erroneously ordered discovery documents either to Claimants or to the Process Arbitrator for in-camera review. (*Id.*) If the Signatory Plaintiffs declined these options, the presumptive finding exercising jurisdiction over the Non-Signatory Plaintiffs would remain in effect until further order of the Process Arbitrator or a court.

52. The Signatory Plaintiffs declined to produce the overreaching discovery, and on November 5, 2026, the Process Arbitrator issued the Sanction Award as a Partial Final Award. (*See* Sanction Award, Exhibit 1.)

53. As part of the Sanction Award, the Process Arbitrator discussed the extrinsic evidence she reviewed in reaching her decision. She specifically cited a motion to compel filed in the class action *Mayhone v. MW Services, Ltd.*, Case No. 1:25-cv-08956 (N.D. Ill. July 30, 2025) for the purposes of assessing Claimants' estoppel theory. (*See* Sanction Award, Exhibit 1 at 13.) In *Mayhone*, the defendants MW Services Ltd. WOW Services Ltd., WOWCom Services, Inc., CyberHorizon Limited, and Arena Entertainment Ltd. moved to compel arbitration and argued that the class-action plaintiffs could not avoid arbitration simply by naming CyberHorizon Limited and Arena Entertainment Ltd. as defendants, who are non-signatories to the arbitration agreement. (*Id.* at 14.) The Process Arbitrator found this evidence "highly probative" on the issue of arbitrability. (*Id*. at 15.)

54. The Sanction Award claims that the "Mayhone defendants moved to compel arbitration, including the disputed Respondents." (*Id*. at 14.) This is inaccurate, as the only Non-Signatory Plaintiff named in *Mayhone* is Arena Entertainment Ltd.

55. The Sanction Award likewise fails to address how the theory of estoppel applies where a signatory seeks to compel a non-signatory to arbitrate, the opposite of the argument Arena Entertainment Ltd. advanced in *Mayhone.* The position asserted by Arena Entertainment Ltd. as a Non-Signatory Plaintiff in this matter is not clearly inconsistent with the position in *Mayhone,* nor has the court in *Mayhone* adopted such position, which is required for judicial estoppel to apply.

56. The Process Arbitrator's Sanction Award binds Non-Signatory Plaintiffs to an Arbitration Agreement they did not sign, forcing them to arbitrate claims in a forum they never consented to. This sanction is not based on the evidence presented or any third-party contractual liability theory. Instead, this sanction purports to bind Non-Signatory Plaintiffs to the Mass Arbitration of over 1,950 Claimants, not based on their own conduct, but as an extreme adverse inference as a result of the actions (or purported inaction) of Signatory Plaintiffs. Based on the Sanction Award, it is clear that the Process Arbitrator overstepped her authority and accepted Claimants' inadequate allegations concerning alter ego and veil piercing as true despite them being unable to meet their heavy burden to establish those claims or plead any relevant details in their demands.

57. Notably, despite the Sanction Award ruling that the Non-Signatory Plaintiffs shall remain in the case as "presumptive affiliates and alter egos" of the Signatory-Plaintiffs, (Sanction Award at 30), the Process Arbitrator did not find sufficient relevant facts to support this. Instead, the Process Arbitrator relied only on a previously filed disclosure statement establishing a corporate connection between the Non-Signatory Plaintiffs and Signatory Plaintiffs, the Linkedin Pages of individual employees, and the registered addresses of the entities. (*Id.* at 14.) The Process Arbitrator found this evidence "probative" of the "interrelationships" of the corporate entities, but

"nondeterminative of the dispute because corporate relationships alone generally will not suffice to bind a nonparty to an arbitration agreement without other relevant factors." (*Id.*)

58. Binding Non-Signatory Plaintiffs to the Arbitration Agreement would force them to expend time and resources arbitrating a dispute for which the award would be unenforceable for lack of jurisdiction.

59. The Non-Signatory Plaintiffs specifically reserved and have not waived their right to contest the AAA's jurisdiction, to object to arbitrability, or to insist on judicial determination of the Claimants' claims because the Non-Signatory Plaintiffs repeatedly and forcefully objected to the arbitration and have not actively and voluntarily participated in the Mass Arbitration proceedings.

**COUNT I**
**VACATUR OF PARTIAL ARBITAL AWARD**
**(on behalf of Non-Signatory Plaintiffs)**

60. Non-Signatory Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

61. Under 9 U.S.C. § 10(a)(4), an award may be vacated where the arbitrator exceeded his or her powers. The arbitrator's authority is limited by the relevant arbitration agreement.

62. Here, Non-Signatory Plaintiffs never agreed to arbitrate. Non-Signatory Plaintiffs are not parties to the Arbitration Agreement, have not consented to arbitration, and have not consented to the AAA exercising jurisdiction or authority over them.

63. In fact, Non-Signatory Plaintiffs' sole participation in the Mass Arbitration was limited to objecting to jurisdiction.

64. As non-signatories to the Arbitration Agreement, the AAA does not have jurisdiction over Non-Signatory Plaintiffs in the Mass Arbitration, nor does the AAA have

jurisdiction to determine whether Non-Signatory Plaintiffs are alter egos of the Signatory Plaintiffs in the Mass Arbitration or whether they fall under any other third-party exception that would bind them to the Arbitration Agreement.

65. Under federal common law, the threshold question of whether Non-Signatory Plaintiffs are subject to the Mass Arbitration is for the court—not the AAA arbitrator—to decide.

66. The Process Arbitrator therefore exceeded her powers in exercising jurisdiction over the Non-Signatory Plaintiffs and binding them to the Mass Arbitration through the Sanction Award.

67. The Sanction Award should further be vacated because the Process Arbitrator acted in manifest disregard for the law.

68. Arbitration is strictly a matter of contract and requires consent for party to waive its right to judicial termination. Non-Signatory Plaintiffs never consented to AAA's jurisdiction over them and never waived their right to a judicial finding.

69. The Process Arbitrator appreciated the existence of these fundamental governing principles by acknowledging that Non-Signatory Plaintiffs are not parties to the Arbitration Agreement, and therefore Claimants "bear the burden to prove an applicable exception" applies, *i.e.* "the doctrine of estoppel, waiver, third-party beneficiary, alter ego, piercing the corporate veil, and voluntary submission to the arbitral jurisdiction." (Process Order 2 at 4, Exhibit 2.)

70. The Process Arbitrator never determined that any applicable exception applies to Non-Signatory Plaintiffs to bind them to the Arbitration Agreement – in fact she found that the Claimants did not meet their heavy burden of establishing an exception. (Sanctions Award, Exhibit 1 at 4 "Based upon the submissions to date, Claimants have not established an applicable exception, which would allow the exercise of arbitral jurisdiction over the disputed Respondents.")

However, the Process Arbitrator ignored the governing legal principles by determining that she could exercise jurisdiction over the Non-Signatory Plaintiffs as an adverse inference for the Signatory Plaintiffs purported failure to comply with a discovery order. (*Id*. at 30 "as a sanction for noncompliance with the orders of this tribunal and forum, the disputed Respondents shall remain in the case as presumptive affiliates and alter egos of the agreed Respondents subject to the arbitration agreement. . .")

71. In reaching this decision, the Process Arbitrator mis-applied the principles of estoppel, and considered evidence in the *Mayhone* matter against all Non-Signatory Plaintiffs, despite the fact that only Arena Entertainment Ltd was a party to that action.

72. Further, the Process Arbitrator failed to tailor the Sanction Award to address the conduct at issue, specifically, Signatory Plaintiffs' decision to withhold specific discovery documents.

73. Instead, the Process Arbitrator targeted the Sanctions Award at Non-Signatory Plaintiffs, improperly binding them to the Mass Arbitration despite their repeated objections and refusal to consent to the AAA's jurisdiction.

74. The Sanctions Award exemplifies a manifest disregard of the law and that the Process Arbitrator grossly exceeded her powers. The Process Arbitrator ignored the principles of arbitral jurisdiction and enforced sanctions against parties who never participated in the Mass Arbitration.

## COUNT II
## VACATUR OF PARTIAL ARBITAL AWARD
## (on behalf of Signatory Plaintiffs)

75. Signatory Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

76. Under 9 U.S.C. § 10(a)(4), an award may be vacated where the arbitrator exceeded his or her powers. The arbitrator's authority is limited by the arbitration agreement.

77. The question of whether parties have submitted a particular dispute to arbitration is an issue for juridical determination unless the parties clearly and unmistakenly provided otherwise.

78. Here, Non-Signatory Plaintiffs never agreed to arbitrate. Non-Signatory Plaintiffs are not parties to the Arbitration Agreement, have not consented to arbitration, and have not consented to the authority of the AAA over them with respect to jurisdictional discovery or otherwise.

79. The Process Arbitrator exceeded her powers in issuing a discovery order targeting information on the Non-Signatory Plaintiffs when the AAA did not have jurisdiction over the Non-Signatory Plaintiffs.

80. Although the discovery ordered document production by the Signatory-Plaintiffs, the information sought targeted the Non-Signatory Plaintiffs. This was by design, as the Non-Signatory Plaintiffs never consented to and expressly objected to jurisdictional discovery.

81. The Process Arbitrator's jurisdictional discovery order seeking documents regarding the corporate structure of Non-Signatory Plaintiffs, even as it related to Signatory-Plaintiffs, was therefore improperly ordered.

82. Further, the production obligations in Process Order No. 2 exceeded the Process Arbitrator's authority and the Signatory Plaintiffs were justified in limiting their production.

83. The purpose of discovery in arbitration is to promote the efficient and economical resolution of disputes. The Consumer Rules therefore contemplate more limited discovery.

84. The discovery ordered was overbroad, sought publicly available documents otherwise accessible to Claimants, and was relevant to only the discrete issue related to Non-Signatory Respondents.

85. Signatory Respondents partial compliance with the discovery order was appropriate, and the Sanctions Order goes beyond the Process Arbitrator's authority by exercising jurisdiction the AAA lacks and implementing sanctions for an improper discovery order.

**PRAYER FOR RELIEF**

**WHEREFORE,** for the reasons set forth herein, Petitioner-Plaintiffs respectfully request that this court enter an Order:

(A) Vacating the Sanctions Award;

(B) Issuing a stay on the Mass Arbitration proceedings until a final determination is made by this Court on the validity of the Sanctions Award;

(C) Granting an award of Petitioner-Plaintiffs' costs and expenses, including reasonable attorneys' fees, to the extent permitted; and

(D) Granting such other further relief as the Court deems just and proper.

Dated: November 10, 2026

*/s/Sondra D. Grigsby*
Jeff Ifrah
Sondra D. Grigsby
Kim Conroy
Katherine Kovalsky*
Robert W. Ward*
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jeff@ifrahlaw.com

sgrigsby@ifrahlaw.com
kconroy@ifrahlaw.com
kkovalsky@ifrahlaw.com
rward@ifrahlaw.com

*Counsel for Petitioner-Plaintiffs*

* *pro hac vice* motions forthcoming